UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID J. CAIVANO,<br><br>        Plaintiff,<br><br>v.<br><br>PRODUCTION WORKERS UNION LOCAL 148 WELFARE FUND; PRODUCTION WORKERS UNION LOCAL 148 SALARIED EMPLOYEES' PENSION PLAN; PRODUCTION WORKERS LOCAL 148 PENSION FUND; AMALGAMATED LOCAL 1931 HEALTH FUND; AMALGAMATED LOCAL 1931 PENSION FUND; RED BANK PENSION SERVICES, INC., and ABC CORPS. #1-5,<br><br>        Defendants. | Civ. No. 18-1908 (KM) (SCM)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

    Before the Court are defendants' motions to dismiss the amended complaint. (DE 20, 21) The Court rules as follows:

    Plaintiff David Caivano's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and punitive damages are dismissed. Because those claims are entirely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), further pleading would be futile, so this dismissal is with prejudice. Caivano's retaliation claim is also dismissed on preemption grounds, but without prejudice to submission of version of this claim that arises under ERISA (or is not preempted by ERISA).

    The counts seeking a declaratory judgment and alleging breach of fiduciary duty state viable causes of action under ERISA, and therefore will not

be dismissed on the basis of preemption. However, the breach of fiduciary duty claim, which is only alleged against defendant Red Bank Pension Services, Inc. ("Red Bank"), will be dismissed for failure to state a claim. This dismissal is without prejudice.

Finally, I will deny defendants' motions to dismiss based on a release in a 2015 settlement agreement and New Jersey's entire controversy doctrine. The complaint, read as it must be in the plaintiff's favor, adequately alleges that he did not learn of the termination of his benefits until 2017, and that this then-unknown claim was not encompassed by the 2015 settlement of the prior state lawsuit.

## I.    Summary of the Allegations and Procedural History

The allegations of the amended complaint (DE 3, cited as "AC __") are treated as true for purposes of these motions to dismiss. *See* Section II, *infra*.

Defendant Production Workers Union Local 148 Welfare Fund ("Welfare Fund") administers health and welfare benefits for a labor union, Local 148.[1] (AC ¶¶1, 12, 14, 25). The Welfare Fund employed Caivano as an administrator from January of 2007 until his termination on August 29, 2012. (*Id.* ¶¶16-18, 25). Caivano is a vested member of the Salaried Employees' Pension Plan ("SEPP") and the Production Workers Local 148 Pension Fund ("Pension Fund"). (*Id.* ¶1). The SEPP provides pension benefits to employees of the Welfare Fund. (*Id.* ¶20).[2]

After his termination, on August 15, 2013, Caivano filed suit in New Jersey Superior Court against Local 148, the Welfare Fund, and the Pension

---

[1]    At some point in 2012, Local 148 was absorbed by another labor union, either Local 1931 and/or Local 298. (AC ¶19). As a result, Amalgamated Local 1931 Health Fund ("1931 Health Fund") and Amalgamated Local 1931 Pension Fund ("1931 Pension Fund") absorbed the Welfare Fund, as well as its SEPP and Pension Fund. (*Id.* ¶¶5-6). These defendants will collectively be referred to as the "Local 148 defendants." Defendant Red Bank Pension Service, Inc., is the third-party administrator for the Pension Fund, the Welfare Fund, the SEPP, the 1931 Health Fund, and the 1931 Pension Fund. (*Id.* ¶7).

[2]    That the Pension Fund is a pension plan which provides pension benefits to its members is implied, though not actually stated, in the amended complaint.

Fund. (*Id.* ¶¶20, 26-27; DE 20-1, at 26-48 (*Caivano v. Prod. Workers Union Local 148,* Docket No. HUD-L-13928-13 ("State Court Litigation"))). The SEPP was not a named defendant in that matter.[3] Caivano brought claims based on the New Jersey Conscientious Employee Protection Act ("CEPA"), the New Jersey Law Against Discrimination ("LAD"), wrongful discharge, breach of contract, promissory estoppel, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. (AC ¶¶27-30; 20-1, at 26-48). He sought lost wages and benefits, as well as severance pay and lifetime medical benefits. (DE 20-1, at 26-48). Caivano's claim for unjust enrichment asserted that he contributed to his pension fund, but that defendants retained those contributions despite his rightful attempt to withdraw them. (*Id.* at 47). Caivano's breach of the implied covenant of good faith and fair dealing asserted that defendants improperly denied Caivano access to his pension account, and failed to provide him information as to his balances and other matters. (*Id.* at 47). The State Court complaint did not allege that Caivano had been improperly terminated from the pension systems.

The State Court Litigation settled in August of 2015. (AC ¶31; 20-1, at 50-53). Under the terms of the settlement agreement, Caivano was paid $125,000. Caivano acknowledged in return that this figure "exceed[ed] any payment, benefit or other thing of value of which he would be otherwise entitled under any policy, plan or contract with defendants." (DE 20-1, at 50). As part of the settlement, Caivano released his claims against defendants. The release provision, which is at issue in the Local 148 defendants' motion in this case, reads as follows:

> In consideration for the payment and commitments described in paragraph one, plaintiff further acknowledges, understands, and agrees that he releases, waives and discharges Production Workers Union Local 148, Productions Workers Union Local 148 Welfare Fund, and Production Workers Union Local 148 Pension Fund,

---

3    There was another party named in the State Court Litigation, the International Union of Allied, Novelty and Production Workers, AFL-CIO. That entity is not named in this federal action.

and their parents, subsidiaries, affiliates, predecessors, successors and assigns, officers, directors, trustees, employees (including, former officers, directors, trustees and employees), owners, agents, insurers, and attorneys, but specifically excluding co-defendant International Union Of Allied Novelty And Production Workers, AFL-CIO (all of the foregoing are collectively referred to hereinafter as the "Releasees"), from all liability, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, in law, admiralty or equity, which against Releasees, that Caivano, Caivano's heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of this agreement, including, but not limited to any claims arising out of Caivano's employment with, or providing services to, the Releasees, or the termination of that employment or other relationship, based upon any theory of tort, contract, partnership, corporate or other law, any express or implied agreement between plaintiff and Releasees, and any other prohibited acts under local, state or federal employment, corporate or benefits laws, including, but not limited to, any claims arising under Title VII of the Civil Rights Act of 1964, as amended; the Americans with Disabilities Act of 1990, as amended; the Family Medical Leave Act, as amended; the National Labor Relations Act or other federal labor laws; the Employee Retirement Income Security Act of 1974, as amended; the Equal Pay Act, as amended; the Fair Labor Standards Act, as amended; the Conscientious Employee Protection Act, as amended ("CEPA"); the New Jersey Law Against Discrimination; the New Jersey Workers' Compensation Act, N.J.S.A. 34:15-39.1 et seq., or any other claim of discrimination based on sex, age, religion, national origin, handicap, disability, veteran status, union activity, marital status, retaliation, or any other basis. This release shall cover all claims that plaintiff knows about and those he may not know about at this time.

(*Id.* at 51). Caivano further agreed to never "make a claim or file a complaint, charge, grievance, arbitration, or lawsuit against Releasees asserting any claims that" were released in the settlement agreement. (*Id.* at 52).

About two and a half years later, on February 9, 2018, Caivano filed this action in federal court. (DE 1). That same day, he filed an amended complaint

(DE 3), which is the pleading addressed by the motions to dismiss that are the subject of this opinion.

Caivano claims that he regularly contributed to the Pension Fund and the SEPP from the date of his hiring in 2006 through the date of his termination in August of 2012. (*Id.* ¶¶32-34).[4] During his employment, Caivano received statements that confirmed his "vested" benefits in the SEPP. (*Id.* ¶35). He received annual statements from the SEPP and the Pension Fund, which showed his yearly contributions and the date upon which he would become vested in the pension. (*Id.* at 22). At the beginning of 2012, third-party administrator Red Bank stated that Caivano was "100%" vested in the SEPP, and that he would receive a monthly benefit of $773.75 beginning on April 1, 2020. (*Id.* ¶23).

In 2017, Caivano sent a request to Red Bank and Local 1931, seeking a statement of his pension account. (*Id.* ¶37). In response, Caivano received a letter from Local 1931 stating that Caivano had been terminated from the SEPP and the Pension Fund based upon the settlement of the State Court Litigation. (*Id.* ¶39). Caivano alleges that the settlement agreement did not release any claim for future pension benefits. (*Id.* ¶¶40-41). Caivano claims that it was Local 148 or Amalgamated Local 1931 which directed Red Bank to terminate his pension account, and that Red Bank has refused to provide him with any documentation related to his account. (*Id.* ¶¶44-46).

Caivano's amended complaint asserts six causes of action: (1) declaratory judgment; (2) breach of contract; (3) retaliation/punitive damages; (4) promissory estoppel; (5) breach of the implied covenant of good faith and fair

---

[4]   The Local 148 defendants argue that the pension plan, specifically SEPP, is an improperly named defendant because it is not a legal entity and has no existence apart from the employer.  Pursuant to 29 U.S.C. § 1132(d)(1), "an employee benefit plan may sue or be sued under [ERISA] as an entity." As a result, "[a]ny money judgment under [ERISA] against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity." 29 U.S.C. §1132(d)(2).

dealing; and (6) breach of fiduciary duty against Red Bank. The thrust of these causes of action is that Caviano has been denied pension benefits to which he believes he is entitled.

Count 1 seeks a declaratory judgment that Caivano is a vested member of the SEPP and the Pension Fund, and that defendants' actions are in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). (*Id.* ¶¶51-54).

Counts 2 and 5, the contract claims, assert that the SEPP "agreement" and Pension Fund are "contracts" that defendants have breached by refusing to acknowledge his vested status and terminating him from the pension plans. (*Id.* ¶¶55-61). Count 2 alleges an explicit breach; Count 5 alleges that the denial of pension benefits breached the implied covenant of good faith and fair dealing. (*Id.* ¶¶73-75).

Count 3, the retaliation claim, asserts that Caivano was terminated from the pension plans for filing a State lawsuit related to his termination. (Id. ¶63). The statutory or common law source of this claim is not specified.

Count 4, promissory estoppel, asserts that defendants promised Caivano pension benefits, that he has been "100%" vested since 2009, and that he relied to his detriment on defendants' promises to receive these benefits. (*Id.* ¶¶67-71).

Count 6, the fiduciary claim, is asserted against third-party administrator Red Bank only. It alleges that Red Bank breached its fiduciary duty to Caivano by terminating him from the SEPP and Pension Fund. (*Id.* ¶81).

## II.    **Standard**

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendants, as the moving parties, bear the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are

accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir.1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

In that regard, courts may consider matters of public record, including prior judicial proceedings. *Schmidt*, 770 F.3d at 249 ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"); *Iacaponi v. New Amsterdam Cas. Co.*, 379 F.2d 311, 311-12 (3d Cir. 1967)

(considering previous litigation referred to in complaint); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (court may consider documents referenced in complaint that are essential to plaintiff's claim).

Reliance on these types of documents does not convert a motion to dismiss into a motion for summary judgment. "When a complaint relies on a document . . . the plaintiff obviously is on notice of the contents the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

## III.   Discussion

The Local 148 defendants and Red Bank have filed separate motions to dismiss, both of which seek dismissal of Caivano's amended complaint under Rule 12(b)(6). The bases of the motions differ and will be addressed separately.

### A. Red Bank's Motion

Red Bank moves to dismiss Caivano's amended complaint on two grounds, discussed in subsections III.A(i) and A(ii), *infra*.

First, Red Bank asserts that Caivano's state law claims are preempted by ERISA's preemption provision (express, or complete preemption), or else by ERISA's civil enforcement mechanism, which is exclusive (conflict preemption). Preemption, although asserted only by Red Bank, applies with equal force to the other defendants as a matter of law. The counts dismissed on preemption grounds will therefore be dismissed as against all defendants.

Second, Red Bank has moved to dismiss Count 6, the breach of fiduciary duty claim, because the amended complaint fails to plead that Red Bank is a fiduciary under ERISA. This argument is particular to Red Bank, the only defendant named in Count 6.

#### i. Preemption standards

ERISA is a comprehensive legislative scheme for federal regulation of private employee benefit plans, which is intended to ensure that the regulation of employee benefit plans would "exclusively [be] a federal concern." *Aetna*

*Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S. Ct. 2488, 2495 (2004). There may be express or complete preemption of State law pursuant to ERISA's preemption provision; alternatively, there may be conflict preemption of State law to the extent it conflicts or interferes with the ERISA scheme.

Congress "expressly included a broadly worded pre-emption provision" in ERISA's statutory scheme. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S. Ct. 478, 482 (1990); *see Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146, 121 S. Ct. 1322 (2001) (noting that Supreme Court has "observed repeatedly that [ERISA's] broadly worded [preemption] provision is 'clearly expansive.'"). That express preemption provision, ERISA § 514, provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" that is covered by ERISA. 29 U.S.C. §1144(a) (herein, "§ 514"). "State law" includes "all laws, decisions, rules, regulations or other State action having the effect of law, of any State." 29 U.S.C. §1144(c)(1). "State Law . . . is 'not limited to state laws specifically designed to affect employee benefit plans.'" *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48, 107 S. Ct. 1549 (1987)). Nor is "state law" limited to formal enactments; "State common law claims, . . . routinely fall within the ambit of § 514." *Menkes*, 762 F.3d at 294 (citing *Ingersoll-Rand*, 498 U.S. at 140; *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 83 (3d Cir. 2012)).

The Supreme Court has explained that "[t]he key to § 514(a) is found in the words 'relate to.' Congress used those words in their broad sense, rejecting more limited pre-emption language." *Ingersoll-Rand*, 498 U.S. at 138. "But at the same time, . . . the term 'relate to' cannot be taken 'to extend to the furthest stretch of its indeterminacy,' or else 'for all practical purposes pre-emption would never run its course.'" *Egelhoff*, 532 U.S. at 146 (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S. Ct. 1671 (1995)); *see Menkes*, 762 F.3d at 293-94 ("'Relate to' has always been given a broad, common-sense meaning.")

A state law "relates to" an ERISA plan, and is thus expressly preempted, "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S. Ct. 2890 (1983). In determining if a state law has "the forbidden connection," courts evaluate "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Egelhoff*, 532 U.S. at 147. The ERISA preemption provision does not apply "if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130 n.1, 113 S. Ct. 580 (1992).

Conflict preemption, as applicable here, is more focused on civil remedies. "Congress intended for the causes of action and remedies available under ERISA § 502 [ERISA's civil enforcement provision] to be the exclusive vehicles for actions by ERISA plan participants asserting improper plan administration." *Menkes*, 762 F.3d at 294 (citing *Pilot Life*, 481 U.S. at 54). §502 of ERISA confers a cause of action for a plan beneficiary or participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a).

A claim is deemed to conflict with ERISA § 502, and is therefore preempted, "when it 'duplicates, supplements, or supplants the ERISA civil enforcement remedy.'" *Menkes*, 762 F.3d at 294 (quoting *Aetna Health*, 542 U.S. at 209); *see also Barber v. UNUM Life Ins. Co. of Am.*, 383 F.3d 134, 140 (3d Cir. 2004) (recognizing that § 502 preempts any claim that "provides a form of ultimate relief in a judicial forum that add[s] to the judicial remedies provided by ERISA."). Section 502 preemption has two requirements: that (1) a plaintiff could have brought the claim under § 502(a) ["ERISA availability"]; and (2) "no other legal duty supports [the plaintiff's] claim" ["ERISA dependence"]. *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*,

388 F.3d 393, 400 (3d Cir. 2004) (citing *Davila*, 542 U.S. at 210). Both the ERISA-availability and the ERISA-dependence requirements must be satisfied for a state-law claim to be preempted by § 502.

### ii. Analysis

With those preemption principles in mind, I consider the claims in Caivano's amended complaint. Where claims are not preempted (.*e.*,, I consider whether they state a claim under Rule 12(b)(6).

**Count 1**: The first count seeks a declaratory judgment that the defendants' "actions are in violation of the SEPP plan document as well as the provisions of ERISA § 502(a)(1)(B)." (AC ¶51).[5] Red Bank reads this count as pleading a state common law cause of action, which would be preempted. I do not read it as a state-law claim, but as an ERISA claim.

Section 502(a) of ERISA's civil enforcement provision, specifically cited in Count 1, provides as follows:

A civil action may be brought—

> (1) by a participant or beneficiary--
> (A) for the relief provided for in subsection (c) of this section, or
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
> . . .
>
> (3) by a participant, beneficiary, or fiduciary
> (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or
> (B) to obtain other appropriate equitable relief
> (i) to redress such violations or
> (ii) to enforce any provisions of this title or the terms of the plan;

ERISA § 502(a), 29 U.S.C. §1132(a).

---

5       The parties do not dispute that the SEPP plan or Pension Fund is an "employee welfare benefit plan" subject to ERISA, as implied in Caivano's complaint. (AC ¶51).

A § 502 claim is an ERISA cause of action. And Red Bank, at least in its reply, recognizes that a declaratory judgment is a viable form of relief in an ERISA § 502 civil enforcement action. (Red Bank Reply at p.3 (citing *Rallis v. Trans World Music Corp.*, 1994 U.S. Dist. LEXIS 3514, at *12-13 (E.D. Pa. Mar. 25, 1994) ("Relief under [§ 502(a)(1)(B)] may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay.")). *Rallies* also recognized that a "non-ERISA declaratory judgment claim" is "preempted by ERISA's broad enforcement provisions," which is "the exclusive vehicle for enforcement of ERISA plans[.]" *Id.* at *12 (citing *Pilot Life*, 481 U.S. at 54). Such a state-law declaratory judgment claim, if pled, might well have been preempted and subsumed by ERISA, but I do not reach that issue.

Count 1 states a cause of action for declaratory relief under ERISA § 502(a)(1)(B), which is self-evidently a federal ERISA claim. Red Bank's motion to dismiss Count 1 on preemption grounds is therefore denied. Count 1, moreover, clearly states a substantive claim under § 502(a) to recover benefits, enforce rights under a Plan, and so forth.

**Counts 2 and 5**: I next address Caivano's claims of breach of contract and breach of the implied covenant of good faith and fair dealing.

In *Menkes*, *supra*, the Third Circuit invoked express "related-to" preemption under § 514 in the course of dismissing claims of breach of contract and breach of the implied covenant of good faith and fair dealing. Such contract claims, the Court of Appeals held, "relate to the administration of the ERISA plans." 762 F.3d at 296. Fundamentally, "[t]o prove breach of contract, a contract [*i.e.*, an ERISA-covered policy of insurance] must have existed." *Id.* "Claims involving denial of benefits or improper processing of benefits require interpreting what benefits are due under the plan. Because these claims explicitly require reference to the plan and what it covers, they are expressly preempted." *Id.* Such a contract claim, the Court of Appeals held, was therefore expressly preempted. *Id.* (citing *Pilot Life*, 481 U.S. at 47-48

(breach of contract claim expressly preempted)); *see Butler v. Liberty Mut.*, 655 F. App'x 138, 140 (3d Cir. 2016) ("state-law claims like the contract and fraud claims . . . in [plaintiff's] complaint fall within the scope of ERISA preemption because they 'relate' to an ERISA-governed benefits plan.").

For the same reasons, Caivano's contract claims are preempted. The amended complaint asserts that the SEPP agreement and Pension Fund are "contracts." Defendants breached them, it alleges, when they refused to acknowledge his vested status and terminated him from the pension plan. (*Id.* ¶¶60-61). As in *Menkes*, an analysis of these common law claims will necessarily require the Court to interpret the ERISA plan at issue and decide whether Caivano is entitled to benefits under the plan.

Accordingly, Counts 2 and 5, Caivano's claims of breach of contract and breach of the implied covenant of good faith and fair dealing, are dismissed. Because amendment of these claims, which are wholly preempted as a matter of law, would be futile, these dismissals are with prejudice.

**Count 4:** Caivano's promissory estoppel claim, which asserts that he detrimentally relied on defendants' representations in the plans that govern the SEPP and Pension Fund, is similarly preempted. This claim requires that the Court to determine whether any benefits are due to Caivano based on the ERISA plan. It is therefore preempted. *See Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989) (preempting promissory estoppel claim under ERISA); *see also Health Scan, Ltd. v. Travelers Ins. Co.*, 725 F. Supp. 268, 270 (E.D. Pa. 1989) (concluding that promissory estoppel claim was "related to" employee benefit plan and was preempted by ERISA).

Red Bank's motion to dismiss Count 4 is therefore granted. For the reasons stated above, that dismissal is with prejudice.

**Count 3:** Caivano's retaliation/punitive damages claim asserts that he was terminated from the pension plan because he filed the State Court Litigation. (*Id.* ¶63). He alleges that he received a letter from Local 1931 that he had been terminated from the SEPP and the Pension Fund based upon the

settlement of the State Court Litigation. (*Id.* ¶39). He does not, however, identify the statutory or common law source of this claim.

As to the punitive damages component of Count 3, Red Bank correctly asserts that conflict preemption requires dismissal. The remedy of punitive damages is "conflict preempted by ERISA's exclusive civil remedy scheme in § 502(a)." *Menkes*, 762 F.3d at 296; *Barber*, 383 F.3d at 140 ("conflict preemption applies to any 'state cause of action that provides an alternative remedy to those provided by the ERISA civil enforcement mechanism' because such a cause of action 'conflicts with Congress' clear intent to make the ERISA mechanism exclusive" (citation omitted)). "Congress did not make punitive damages available under ERISA," and as a result, state law claims that allow for remedies that were rejected by Congress in enacting ERISA are conflict preempted. *Menkes*, 762 F.3d at 296.

Accordingly, Caivano's claim for punitive damages is preempted and will be dismissed with prejudice.

As to the retaliation component of Count 3, the analysis is more complex. Assuming that a state-law claim was intended, I must analyze whether it is preempted. A state law claim for retaliation is preempted when it can be asserted under § 510 (ERISA availability) and is premised on a denial of benefits to which an employee is entitled under a benefit plan (ERISA dependence). *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987) (holding that state law claims for breach of contract, wrongful termination, and retaliation were preempted).

ERISA dependence is apparent from the face of the amended complaint. Count 3 alleges that, as a result of Caivano's filing and pursuit of the State Court Litigation, he was denied pension benefits to which he was entitled under an ERISA plan.

As for ERISA availability, the analysis is more complex. The most likely candidate would be ERISA § 510:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or

> beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . The provisions of [ERISA § 502] shall be applicable in the enforcement of this section.

ERISA § 510, 29 U.S.C. § 1140. This anti-retaliation provision is designed to "prevent unscrupulous employers from discharging or harassing their employees in order to prevent them from obtaining their statutory or plan-based rights." *Zipf v. American Tel. & Tel Co.*, 799 F.2d 889, 891 (3d Cir. 1986). It prohibits employers from taking adverse employment actions with a "benefits-defeating" motive. *Wood v. Prudential Ins. Co.*, 207 F.3d 674, 677 (3d Cir. 2000). To establish a claim of retaliation under ERISA § 510, a plaintiff must show: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the [plaintiff] may become entitled." *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987) (citing 29 U.S.C. § 1140), *cert. denied*, 484 U.S. 979, 98 L. Ed. 2d 492, 108 S. Ct. 495 (1987).

Count 3 alleges that the defendants removed Caivano from the SEPP and Local 148 pension plans in retaliation for his having instituted the State Court Litigation. In that now-settled State Court Litigation, he did not sue for pension benefits; rather he alleged that he was fired wrongfully in retaliation for his acts as a whistleblower, and he sought to recover severance pay and lifetime medical benefits. (AC ¶¶ 27, 28)

This, however, is not an allegation that the employer disciplined or otherwise took action against Caivano "for exercising any right to which he is entitled under the provisions of an employee benefit plan." ERISA § 510, 29 U.S.C. § 1140. It is an allegation that it punished him for bringing the state wrongful termination/whistleblower lawsuit. That may be some kind of claim, but it is not self-evidently a § 510 claim. So, depending on what kind of claim it is, preemption may not apply.

Still, what kind of claim is it? Impossible to tell. Count 3 might be a faulty ERISA § 510 claim, some kind of state law claim, or just a punitive damages demand with extraneous material inserted. It is denominated "Retaliation/Punitive Damages." It does not specify a statutory or common law basis. Confusingly, the ad damnum paragraph seeks compensatory damages, including lost benefits and damages for emotional distress, but then lists punitive damages as one of the forms of compensatory damages that is sought. (AC, paragraph following ¶ 65)

This does not meet the minimal pleading standards of Rule 8. *See* Section II, *supra*. I therefore dismiss the retaliation component of Count 3 for failure to state a claim.

This part of the dismissal is without prejudice to amendment. Whether plaintiff should attempt to salvage this retaliation claim is another matter. The gist of plaintiff's injury—that he has been cut off from pension benefits to which he is entitled—is covered by a ready-made § 502 ERISA cause of action, asserted in Count 1. [6]

**Count 6:** Red Bank, the only defendant named in Count 6, recognizes that there is a cause of action for breach of fiduciary duty under ERISA. *See* 29

---

[6]    In some sense it could be alleged that any denial of pension benefits is a "retaliation" against the applicant for attempting to exercise ERISA rights. To demonstrate such retaliation, however, the applicant would have to demonstrate an entitlement to those pension benefits. Denial of benefits to which the beneficiary was entitled, however, would be sufficient to establish a cause of action under § 502, without the complicating factor of "retaliation."

Likewise, it might be alleged that any wrongful termination of employment was a denial of pension benefits that would have accrued if employment continued. In the ERISA context the courts have maintained a distinction between retaliation claims and others, so that they do not become redundant. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1113 (6th Cir. 2001) (plaintiff must establish that employer "had the specific intent of avoiding ERISA liability when it discharged him. Otherwise, every employee discharged by a company with an ERISA plan would have a claim under § 510.").

The real complaint here is that Caivano was entitled to the pension benefits, but was cut off. If he was entitled, he wins; if not, he loses. The theory that the employer had a retaliatory motive does not add much, if anything.

16

U.S.C. § 1101; *Pilot Life*, 481 U.S. at 57. Although Count 6 does not explicitly cite ERISA, I will interpret it as a federal ERISA claim. (In any subsequent amendment of the complaint, this should be made explicit.) I therefore deny Red Bank's motion to dismiss Count 6 on preemption grounds—although I do dismiss it without prejudice on substantive grounds.

Preemption aside, Red Bank argues that Count 6 does not sufficiently allege a claim of breach of fiduciary duty. Specifically, the amended complaint fails to allege factually the essential element that Red Bank is a plan fiduciary under ERISA.

To assert a claim for breach of fiduciary duty under ERISA, a plaintiff must establish that: "(1) a plan fiduciary (2) breache[d] an ERISA-imposed duty (3) causing a loss to the plan." *Chaaban v. Criscito*, 468 F. App'x 156, 161-62 (3d Cir. 2012) (citing *Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007)).

For purposes of the first element, ERISA defines a plan fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002 (21)(A). A fiduciary under ERISA "must be someone acting in the capacity of manager, administrator, or financial adviser to a 'plan.'" *Pegram v. Herdrich*, 530 U.S. 211, 222, 120 S. Ct. 2143, 2151 (2000) (citing 29 U.S.C. §§ 1002(21)(A)(i)-(iii)). Fiduciaries are defined "in functional terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993).

"[T]he linchpin of fiduciary status under ERISA," however, "is discretion." *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994). The issue of discretion turns on whether a party "maintained any authority or

control over the management of the plan's assets, management of the plan in general, or maintained any responsibility over the administration of the plan." *Id.* On the other hand, "persons who perform purely ministerial tasks, such as claims processing and calculation, cannot be fiduciaries because they do not have discretionary roles." *Confer v. Custom Engineering Co.*, 952 F.2d 34, 39 (3d Cir. 1991).

A § 502(a)(1)(B) claim for benefits can be brought against a third-party administrator of a plan *if* it is a fiduciary. *See, e.g., Prof'l Orthopedic Assocs. PA. v. Horizon Blue Cross Blue Shield*, 2015 U.S. Dist. LEXIS 123748, at *12 (D.N.J. Sep. 16, 2015) (relying on *Evans*, which held that "defining feature of a proper defendant under ERISA § 502(a)(1)(B) is whether that person or entity 'exercis[es] control over the administration of benefits.'"); *Briglia v. Horizon Healthcare Svcs., Inc.*, 2005 WL 1140687, at *5 (D.N.J. May 13, 2005). But a third-party administrator is not necessarily a fiduciary simply by virtue of holding that position. *See Kyle Railways, Inc. v. Pacific Administration Servs. Inc.*, 990 F.2d 513, 516 (9th Cir. 1993) (third-party plan administrator who processed claims was not fiduciary where plan required that employer make final decision concerning discretionary issues).

With those principles in mind, the Court turns to the specific allegations against Red Bank in the amended complaint. Caivano alleges that Red Bank is the third-party administrator for the SEPP and Pension Fund. (AC ¶¶7, 15). Beginning in 2012, Red Bank allegedly stated that Caivano was "100%" vested in the SEPP and that he would receive a monthly benefit of $773.75 beginning on April 1, 2020. (*Id.* ¶23). In 2017, Caivano sent a letter to Red Bank and Local 1931 requesting a statement of his account. Local 1931, not Red Bank, responded. That response stated that Caivano had been terminated from the account based on the settlement of the State Court Litigation. (*Id.* ¶¶37-39). The amended complaint itself alleges, not that Red Bank made the decision to terminate Caivano's pension account, but rather that it informed Caivano that it did so at the direction of the Local 148 defendants. (*Id.* ¶44). Caivano asserts

that as the third-party administrator, Red Bank breached a fiduciary duty by failing to safeguard the funds in the plans. (*Id.* ¶¶79-81).

These factual allegations are not sufficient to establish that Red Bank had discretionary authority to interpret the plan or make benefits determinations. In fact, they tend to suggest the opposite. *Cf. Evans v. Employee Benefit Plan, Camp Dresser & McKee, Inc.*, 311 F. App'x 556, 558 (3d Cir. 2009). Nothing in the complaint establishes that Red Bank was anything more than a claims processor, acting at the direction of Local 1931. *See, e.g., Cohen v. Horizon Blue Cross Blue Shield of N.J.*, 2013 WL 5780815, at *8 (D.N.J. Oct. 25, 2013) (holding that allegation that third-party administrator was fiduciary, without supporting facts, was not sufficient to withstand motion to dismiss).

Caivano cites to a series of cases that addressed fiduciary status at the summary judgment or post-trial stage to argue that dismissal would be premature. It is true that fiduciary status may be a fact-dependent issue; still, Caivano is not entitled to go forward on on a claim that does not meet the pleading standards of Fed. R. Civ. P. 8. *Cf. United States v. Kensington Hosp.*, 760 F. Supp. 1120, 1134 (E.D. Pa. 1991) ("[I]t defies logic to suggest that all determinations of the existence of a fiduciary duty must go to the trier of fact. Under those circumstances, any plaintiff could plead vague allegations of fiduciary duty, and force the defendant to engage in needless discovery because the court could not decide the matter on a motion to dismiss or motion for summary judgment.").

Red Bank's motion to dismiss Count 6 for failure to state a claim will be granted, without prejudice to the submission of amended complaint that sets forth sufficient facts that Red Bank is a fiduciary under ERISA.

### B. Local 148's Motion

The Local 148 defendants, too, move to dismiss Caivano's amended complaint. They cite the agreement to settle the State Court Litigation, which

contained a release of claims, and also invoke the New Jersey entire controversy doctrine, a form of *res judicata*.

### 1. Release and settlement

The Local 148 defendants contend that the settlement agreement from the State Court Litigation bars this action in its entirety. The settlement agreement contained a release of claims that were brought or could have been brought as of the time the release was executed. Caivano responds that vested pension benefits are not alienable under ERISA; that the terms of the settlement are ambiguous as to which "benefits" were being released; and that his claims as to pension benefits did not accrue until after the execution of the settlement agreement, when he learned that he had been terminated from the pension system.

"[A] release is merely a form of contract and the general rules that apply to contract interpretation apply to releases." *Domanske v. Rapid-Am. Corp.*, 330 N.J. Super. 241, 246 (App. Div. 2000).[7] "'[W]hen reading a contract, our goal is to discover the intention of the parties.'" *Highland Lakes Country Club & Cmty. Ass'n v. Franzino*, 186 N.J. 99, 115-16 (2006) (quoting *Marchak v. Claridge Commons, Inc.*, 134 N.J. 275, 282 (1993)). In determining the parties' intent, the court considers "the contractual terms, the surrounding circumstances, and the purpose of the contract." *Id.* "Generally, the terms of an agreement are to be given their plain and ordinary meaning." *M.J. Paquet, Inc. v. N.J. DOT*, 171 N.J. 378, 396 (2002).

As explained above, Caviano's complaint seeks a declaration that he is entitled to his vested pension benefits under ERISA. The accrual date of a non-fiduciary claim under § 502 is the date that a party's claim for benefits has been "denied." *See Romero v. Allstate Corp.*, 404 F.3d 212, 222 (3d Cir. 2005); *cf.* 29 C.F.R. § 2560.503-1(m)(4) (defining "adverse benefit determination" to include "a denial, reduction, or termination of, or a failure to provide or make

---

[7]    The settlement agreement provides that it is governed by New Jersey law. (DE 20-1, at 53, ¶13).

payment (in whole or in part) for, a benefit"). However, under the "clear repudiation" rule, an "event other than a denial" can trigger accrual (and therefore the statute of limitations), "as long as it is (1) a repudiation (2) that is clear and made known to the beneficiary." *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 521 (3d Cir. 2007).

The release, executed in August 2015, states that it releases all claims "from the beginning of the world to the date of this Agreement." (DE 20-1, at 51. *See also id.* ("This release shall cover all claims that plaintiff knows about and those he may not know about *at this time.*") (emphasis added)). Thus the release covers only claims that had accrued, or at least were known, as of August 2015. The amended complaint alleges that in 2017 Caivano sent a request for a recent statement of his pension account, and was surprised to learn that he had been terminated from the SEPP and the Pension Fund based upon the settlement of the State Court Litigation. (*Id.* ¶¶ 37, 39). Thus he learned about the cancellation some two years after the execution of the 2015 settlement agreement. Of course, the allegations of the complaint are just allegations; a different picture may or may not emerge in discovery. But for purposes of a motion to dismiss, the allegation that this claim was not released in 2015 is sufficient.

*Crawford v. N.J. Transit Empls. Ret. Plan*, 2011 N.J. Super. Unpub. LEXIS 1136, at *4 (App. Div. May 5, 2011), cited by the Local 148 defendants, is distinguishable. There, the New Jersey Appellate Division concluded that a release agreement's explicit reservation of rights to bring a claim for "any vested right to pension benefits which [plaintiff] might have," did not preserve a later claim for a *non-vested* pension right. *Id.* at *9. *Crawford* did not announce a *per se* rule that a general release extinguishes all pension-related claims absent an explicit reservation of rights. Rather, *Crawford* interpreted the limited language of *that* release's reservation and concluded that it did not encompass non-vested rights. *See id.* at *9.

Additionally, the situation in *Crawford* was very different from this one. Crawford had earlier settled a suit in which he claimed discriminatory termination. He then sued for pension benefits that he would have received had he not been terminated. *Id.* at *9-10. He was, in effect, resurrecting his settled discrimination suit for damages in a new guise, "asserting in a second complaint that 'but for' discriminatory practices, he would have continued working for [defendant] and compiled sufficient service" to vest in the pension at a later date. *Id.* at *10. In addition, the release in *Crawford* was phrased much differently: unlike Caivano's, the *Crawford* release explicitly extinguished "all claims involving any continuing effects of actions or practices" by the defendant. In the face of such language, the need for a reservation of rights to bring future claims is apparent.

The settlement agreement in Caivano's case, moreover, is less clear about what claims for benefits are being released. In the agreement, Caivano acknowledges that the $125,000 settlement payment exceeds "any payment, benefit or other thing of value to which he would be otherwise entitled under any policy, plan or contract with defendants." (DE 20-1, at 50). The application to pension benefits requires factual development; the term "benefits," for example, is not defined in the settlement agreement. The entire subject matter of the settled State Court Litigation, moreover, was discriminatory discharge and resulting damages in the form of severance pay and medical benefits. And the settlement agreement, unlike the *Crawford* agreement, does not contain any specific reservation of rights that would definitively specify claims that are not extinguished by the release.

I do not say, of course, that Caivano will prevail on this claim. But employing a motion to dismiss standard and interpreting the allegations in Caivano's favor, I cannot rule as a matter of law that the claims asserted in Caivano's amended complaint were released. Dismissal of the amended complaint on those grounds is therefore denied.

## 2. Entire controversy

Relatedly, the Local 148 defendants assert that Caivano's amended complaint is precluded by the settled State Court Litigation under New Jersey's version of *res judicata,* the entire controversy doctrine. N.J. Ct. R. 4:30A.

A federal court is required to give the same preclusive effect to a state court judgment that it would have under the law of the state where it was rendered. *Chrystal v. N.J. Dep't of Law & Pub. Safety*, 535 Fed. Appx. 120, 123 (3d Cir. 2013). Thus to determine whether "preclusion is a necessary consequence of prior state court litigation, a court must look to the law of the state adjudicating the prior action." *Coppolino v. Total Call Intern. Inc.*, 588 F. Supp. 2d 594, 599 (D.N.J. 2008) (citation and internal quotations omitted).

New Jersey's entire controversy doctrine "requires joinder in one action of all legal and equitable claims related to a single underlying transaction." *Manhattan Woods Golf Club, Inc. v. Arai*, 312 N.J. Super. 573, 577 (App. Div. 1998). Failure to join related claims results in their later preclusion. N.J. Ct. R. 4:30A. Notably, "[i]t is the factual circumstances giving rise to the controversy itself, rather than a commonality of claims, issues or parties that trigger the requirement of joinder." *Jackson v. Midland Funding LLC*, 468 Fed. Appx. 123, 125 (3d Cir. 2012). The purpose of the doctrine is to "ensure fairness to parties and achiev[e] economy of judicial resources." *Kent Motor Cars, Inc. v. Reynolds & Reynolds Co.*, 207 N.J. 428, 443 (2011).

The entire controversy doctrine is an equitable one, and "the polestar of the application of the rule is judicial fairness." *Chrystal*, 535 Fed. Appx. at 123 (citation omitted). "As a result, the doctrine does not apply to bar component claims that are either unknown, unarisen or unaccrued at the time of the original action." *Id.* at 124. (citation omitted). Further, "in considering fairness to the party whose claim is sought to be barred a court must consider whether the claimant had a fair and reasonable opportunity to have fully litigated that claim in the original action." *Id.* (citation omitted).

23

As I have already stated, the amended complaint adequately alleges that Caivano's current claims were unaccrued and unknown before 2017. It follows that they are not subject to the entire controversy rule. Once again, of course, the allegation that these claims were new and unknown may be revisited in light of discovery. For now, however, the motion to dismiss the amended complaint based on the entire controversy doctrine must be denied.[8]

## IV.    Conclusion

For the reasons set forth above, I grant in part and deny in part defendants' motions to dismiss the amended complaint.

1. **The motions to dismiss are denied as to the following:**

    Count 1 (declaratory judgment)

2. **Dismissed with prejudice on grounds of ERISA preemption are the following:**

    Count 2 (breach of contract);

    Count 3 (punitive damages claim only);

    Count 4 (promissory estoppel); and

    Count 5 (breach of implied covenant of good faith and fair dealing).

3. **Dismissed without prejudice are the following:**

    Count 3 (retaliation claim only)

    Count 6 (breach of fiduciary duty, asserted against Red Bank only).

---

[8]    Caivano was indicted in 2010 for embezzlement and conspiracy to embezzle from Local 148 by granting unauthorized salary increases and bonuses. (DE 20-1, at 57-80). In January of 2013, Caivano pled guilty to a superseding indictment that charged him with engaging in an improper financial transaction with a labor union, namely, willfully causing a labor union to issue him a loan. (*Id.* at 82-89); 29 U.S.C. § 503(a). As a result of this conduct, the Local 148 defendants contend, Caivano has forfeited his right to a pension.

That issue cannot be decided as a matter of law on a motion to dismiss. Causing a labor union to grant him an unauthorized loan does not conclusively establish that he violated a fiduciary duty owed to a pension plan, warranting forfeiture. *Cf. Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 110 S. Ct. 680, 107 L. Ed. 2d 782 (1990) (holding that chief executive officer of union and trustee of pension who pled guilty to embezzlement *from union* was not found to have breached duty owed to *pension plans* warranting set-off from his vested benefits).

These dismissals without prejudice shall become with-prejudice unless an appropriate motion to amend is submitted within 30 days and granted.

An appropriate order follows.

Dated: November 21, 2018

Kevin McNulty
United States District Judge