## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**DAVID J. CAIVANO,**

      **Plaintiff,**

      **v.**

**PRODUCTION WORKERS UNION
LOCAL 148 WELFARE FUND,
PRODUCTION WORKERS UNION
LOCAL 148 SALARIED EMPLOYEE'S
PENSION PLAN, PRODUCTION
WORKERS LOCAL 148 PENSION
FUND, AMALGAMATED LOCAL 1931
HEALTH FUND, AMALGAMATED
LOCAL 1931 PENSION FUND, RED
BANK PENSION SERVICES, INC., and
ABC CORPS. 1–5,**

      **Defendants.**

Civ. No. 18–1908 (KM) (SCM)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    David Caivano served as a union trustee overseeing a local chapter of the Production Workers Union. After his termination, he sued the union, seeking a return of pension funds to which he believes he is entitled. Now before the Court are motions for summary judgment filed by the defendants, Production Workers Union Local 148 Welfare Fund, Production Workers Union Local 148 Salaried Employee's Pension Plan, Production Workers Local 148 Pension Fund, Amalgamated Local 1931 Health Fund, and Amalgamated Local 1931 Pension Fund (DE 59). The plaintiff, David Caivano, has also moved for summary judgment. (DE 60).[1]

    For the following reasons, the defendants' motion is **GRANTED**, and the plaintiff's motion is **DENIED**.

---

[1] "DE" refers to the docket entries in this case.

## I.   BACKGROUND

### A. The Defendants

Defendant Production Workers Union Local 148 Welfare Fund ("the Welfare Fund") is an entity that administers a health and welfare benefits fund for Local 148 of the Production Workers Union. (DE 60-2 ¶ 2).

Defendant Production Workers Union Local 148 Pension Fund ("the Pension Fund") is an ERISA[2]-qualified pension fund for the members and officers of Local 148. (DE 60-2 ¶ 5).

Defendant Production Workers Union Local 148 Salaried Employees Pension Plan ("the SEPP") is an ERISA-qualified pension plan for salaried employees of the Local 148 and the Welfare Fund. (DE 60-2 ¶ 3). The parties dispute whether, pursuant to ERISA, the SEPP is an entity that can sue and be sued.

Amalgamated Local 1931 Health Fund ("1931 Health Fund") and Amalgamated Local 1931 Pension Fund ("1931 Pension Fund") are the successor funds to the Welfare Fund, the Pension Fund, and the SEPP. Those predecessor funds were absorbed when Local 148 was merged into Local 1931 in 2012.

Red Bank Pension Service, Inc. is the third-party administrator for the Pension Fund, the Welfare Fund, the SEPP, the 1931 Health Fund, and the 1931 Pension Fund. By the parties' stipulation, Red Bank is no longer a party to this lawsuit. (DE 57).

### B. Caivano's Role as Trustee

In August 1999, the International chapter of the Production Workers Union placed Local 148 into trusteeship and appointed Caivano as deputy trustee. Shortly thereafter, it elevated him to the position of trustee. (DE 59-7 Ex. W at 71:11–72:7 & 82:20–22 & 83:4–14; DE 59-7 Ex. X at 9:11–24).

---

[2]   "ERISA" refers to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

In his role as trustee, Caivano oversaw the day-to-day operations of Local 148, reporting daily to the president of the International, Hermes Ruiz, and later to Ruiz's successor, Mark Spano. (DE 59-7 Ex. W at 85:24–86:11). Caivano also reported to the International's secretary-treasurer and to the International's lawyer. (DE 59-7 Ex. W at 85:24–86:11). During Caivano's time as trustee, the International awarded him pay raises every year through 2004. (DE 59-7 Ex. W at 84:13–23).

In 2004, while Caivano was the trustee, the International released Local 148 from trusteeship. (DE 59-7 Ex. W at 83:4–14 & 93:20–96:4).

**C. The Salaried Employees Pension Plan**

The Salaried Employees Pension Plan is a pension plan that covers salaried employees of Local 148 and the Welfare Fund. (DE 59-7 Ex. X at 18:10–24; DE 59-7 Ex. Y at 136:12–16). Only employees of the Local 148 or the Welfare Fund may participate in the SEPP. (DE 59-7 Ex. X at 18:25–19:4).

The provisions of the SEPP and its eligibility requirements are detailed in the "Red Bank Pension Services, Inc. Defined Benefit Prototype Plan and Trust" ("the plan agreement") and in the corresponding adoption agreement. (DE 59-7 Ex. Y at 105:2–25; DE 59-4 Exs. O and P). The adoption agreement requires the plan's sponsor (the Board of Trustees of the Welfare Fund) to determine which employees are eligible to participate in the SEPP. (DE 59-7 Ex. Y at 80:11–23; DE 59-4 Ex. O). An eligible employee's SEPP benefits do no vest until the employee has rendered one thousand hours of service annually for two years. (DE 59-7 Ex. Y at 161:9–22).

The SEPP plan documents, by their own terms, determine eligibility. Those documents provide that the SEPP covers only salaried employees of Local 148 and the Welfare Fund. (DE 59-4 ¶ 25). The documents also call for the fund administrator to interpret their terms. (DE 59-4 ¶ 25).

The adoption agreement defines "Eligible Employees" as all "Employees." (DE 59-4 ¶ 27 & Ex. P). The plan agreement, in turn, defines an "Employee" as "any person who is employed by the Employer." (DE 59-4 ¶ 28 & Ex. Q). It

3

further calls for the administrator to "determine all questions arising in connection with the administration, interpretation, and application of the Plan." (DE 59-4 ¶ 29 & Ex. Q at 16 § 2.4). That authority is broad: "Benefits under this Plan will be paid only if the Administrator decides in its discretion that the applicant is entitled to them." (DE 59-4 ¶ 30 & Ex. Q at 16 § 2.4). The plan agreement also provides that "[a]ny such determination by the Administrator shall be conclusive and binding upon all persons." (DE 59-4 ¶ 31 & Ex. Q at 16 § 2.4). Finally, the plan agreement provides that "[t]he Administrator may establish procedures, correct any defect, supply any information, or reconcile any inconsistency in such manner and to the extent as shall be deemed necessary or advisable to carry out the purpose of the Plan." (DE 59-4 ¶ 33 & Ex. Q at 16 § 2.4).

Caivano does not dispute that only salaried employees of Local 148 and the Welfare Fund are eligible for SEPP benefits. (DE 59-7 & Ex. X at 18:10–24).

### D. Caivano Asks to Participate in the SEPP

In October 2003, Caivano sent Ruiz a routine trustee report. (DE 59-7 Ex. S). In the report, Caivano objected to the decision of the Local's president, Joseph Nardone, to exclude him from participation in the SEPP.[3] (DE 59-7 Ex. S). Nardone, Caivano complained, had taken the position that the SEPP was for salaried employees of Local 148 and the Welfare Fund only, and that Caivano worked for neither entity. (DE 59-7 Ex. S). According to Caivano, Nardone reasoned that because the International had appointed Caivano, he—Caivano—was an International employee and thus ineligible to participate in the SEPP. (DE 59-7 Ex. S). Caivano asserted to Ruiz that this interpretation was incorrect. (DE 59-7 Ex. S). Caivano instead believed that he became eligible to participate in the SEPP and the Pension Fund when the International appointed him deputy trustee in 1999. (DE 59-7 Ex. X at 21:1–24:8). At the time Caivano wrote to Ruiz, Caivano's name did not appear on any SEPP documents that would indicate that he was a SEPP participant. (DE 59-1 ¶ 31).

---

[3]     Nardone was also a trustee of the Welfare Fund. (DE 59-7 Ex. S).

On December 17, 2003, Caivano and Michael Scaraggi, the attorney for the Welfare Fund and its trustees, attended a Welfare Fund board meeting, at which the trustees discussed the SEPP. The meeting minutes reflect that the trustees listed all SEPP participants and that the list did not include Caivano's name. (DE 59-1 ¶¶ 23 & 30 & Ex. A). The trustees did not address the issue of Caivano's SEPP participation. (DE 59-1 ¶ 31).

### E. Caivano's Employment with the Local and SEPP Enrollment

In 2004, the International removed Local 148 from trusteeship. (DE 59-7 Ex. W at 93:20–96:4 & 100:10–101:9). Because this move effectively eliminated Caivano's position as trustee, he joined the Local as a field representative and part-time administrator of the Welfare Fund. (DE 59-7 Ex. W at 93:20–96:4 & 100:10–101:9). He remained in those positions until 2007. (DE 59-7 Ex. W at 93:20–96:4 & 100:10–101:9).

As administrator of the Welfare Fund, Caivano oversaw the SEPP and calculated contributions for the employees of the Fund and the Local. (DE 59-7 Ex. X at 17:9–25 & 31:23–34:9). Caivano also generated the paperwork—so-called census reports—upon which Red Bank, the SEPP's actuarial firm, relied. (DE 59-7 Ex. X at 17:9–25 & 31:23–34:9). Caivano annually sent census reports to Red Bank to allow the firm to add new members to its actuarial analysis. (DE 59-7 Ex. X at 17:9–25 & 31:23–34:9). Red Bank confirmed the data provided by the Welfare Fund and Local 148 to determine if each employee had rendered the appropriate service required to participate in the SEPP. (DE 59-7 Ex. Y at 17:6–18:2).

In July 2004, Caivano added himself to the SEPP by including his name in a routine census report to Red Bank. (DE 59-7 Ex. T). Caivano listed his eligibility date as July 1, 1999, the date his service as (deputy) trustee began. (DE 59-7 Ex. T). Later that year, Red Bank created a census data verification form from the census report that Caivano had submitted. (DE 59-7 Ex. U).

Caivano also added himself to the Local 148 Pension Fund, again listing July 1, 1999 as his eligibility date. (DE 59-7 Ex. X at 21:1–24:8). He later

claimed that he had received permission from Spano, the International's president, to add himself and to make back contributions. (DE 59-7 Ex. X at 21:1–24:8). However, under the terms of the trusteeship, the International did not have the authority to determine member eligibility and to authorize back contributions into the Local 148 Pension Fund and the SEPP. (DE 59-4 ¶ 57). As noted above, the plan documents of the Local 148 Pension Fund, by their own terms, govern eligibility. (DE 59-4 ¶ 58).

### F. August 2004 Welfare Fund Trustees' Meeting

On August 3, 2004, the trustees of the Welfare Fund met. (DE 59-1 ¶ 35; DE 59-1 Ex. C). Scaraggi, the attorney for the trustees and the Welfare Fund, and Caivano, by then serving as part-time administrator, attended. (DE 59-1 ¶ 35; DE 59-1 Ex. C). At the meeting, Caivano noted that he was not covered by the SEPP, and he requested SEPP coverage, retroactive to 1999. (DE 59-1 ¶¶ 39 & 40 & Ex. C). The trustees took no action with respect to Caivano's request. (DE 59-1 ¶ 41 & Ex. C).

On Scaraggi's recommendation, at the meeting the trustees approved the termination of the SEPP. (DE 59-1 ¶ 38 & Ex. C). In 2005, the SEPP was frozen. (DE 59-1 ¶ 44). At that time, any participants' vested benefits remained fixed and unchanged, but benefits ceased accruing for non-vested or partially vested employees. (DE 59-7 Ex. Y at 28:6–21).

In 2007, Caivano became the Welfare Fund's full-time administrator, a position he held until his termination in 2012. (DE 59-7 Ex. W at 93:20–96:4 & 100:10–101:9)

### G. Caivano's Indictment and Guilty Plea

On August 31, 2010, a twenty-nine-count indictment was filed in the United States District Court for the District of New Jersey against Caivano, as Local 148 trustee, and Joseph Arena, the president of Local 148. (DE 59-1 ¶ 47). The indictment alleged a conspiracy between Caivano and Arena to embezzle salary increases and bonuses from Local 148 for Arena's benefit and

from the Welfare Fund for Caivano's benefit. (DE 59-1 ¶ 48). Shortly thereafter, Caivano left his position on disability leave. (DE 59-1 ¶ 49).

On June 6, 2012, Arena entered a guilty plea that required him to pay restitution to Local 148 of approximately $120,000.00. (DE 59-1 ¶ 50). On June 13, 2012, the International again placed Local 148 in trusteeship, and it installed Frank Olvera as trustee. (DE 59-1 ¶ 51).

On August 28, 2012, while Caivano was on disability leave, he was terminated as administrator of the Welfare Fund and removed from his position as secretary–treasurer of Local 148. (DE 59-1 ¶ 52).

On March 21, 2013, Caivano entered into an agreement to plead guilty. (DE 59-1 ¶ 61; DE 59-7 Ex. X at 210:2–211:11). The agreement required him to repay the Welfare Fund $110,000. (DE 59-1 ¶ 61; DE 59-7 Ex. X at 210:2–211:11).

### H. Caivano's Termination and SEPP Roll-Over Request

On August 28, 2012, the day of his termination, Caivano began an e-mail exchange with Red Bank's third-party administrator, George Houghton, seeking to roll over his SEPP benefits. (DE 59-7 Ex. X at 42:15–46:5). At some point, Houghton told Caivano that was unable to help and referred him to the trustees. (DE 59-7 Ex. X at 42:15–46:5).

On September 13, 2012, Caivano again asked Red Bank to roll over the funds in his SEPP account. (DE 59-1 ¶ 53, DE 59-7 Ex. X at 42:15–46:5). Red Bank referred the matter to Scaraggi. (DE 59-1 ¶ 54). Scaraggi, in turn, investigated Caivano's claim that he was covered by the SEPP and reported this to the Welfare Fund trustees at their November 2012 meeting. (DE 59-1 ¶ 55).

### I. November 2012 Welfare Fund Trustees' Meeting

On November 19, 2012, the trustees of the Welfare Fund met again. (DE 59-1 ¶ 56 & Ex. D). Scaraggi attended in his role as attorney for the board of trustees of the Welfare Fund, and Joseph Giovinco attended as union trustee of the Welfare Fund. (DE 59-1 ¶ 56 & Ex. D).

The trustees discussed Caivano's participation in the SEPP, in light of his September 13 email to Red Bank in which he had requested a roll-over of his SEPP benefits. (DE 59-1 ¶ 57 & Ex. D). Scaraggi reported that he had determined that Caivano was not entitled to participate in the SEPP. (DE 59-1 ¶ 58 & Ex. D). The trustees asked Houghton, who was also at the meeting, to recalculate the amounts due from Local 148 to the SEPP, excluding contributions made on Caivano's behalf. (DE 59-1 ¶ 59 & Ex. D).

On February 11, 2013, Giovinco reported to Spano that Red Bank had mistakenly created an unfunded liability through Caivano's participation in the fund. (DE 59-4 ¶ 20 & Ex. N). Giovinco explained that Caivano had not been an eligible employee until 2004; before that, in his position as trustee, Caivano had paid dues to another union, Local 20. (DE 59-4 ¶ 21 & Ex. N). Giovinco assured the International that he would investigate further and that he would correct any mistakes he uncovered. (DE 59-4 ¶ 22 & Ex. N).

As promised, Giovinco investigated Caivano's claims and, after consulting with Scaraggi and Houghton, concluded that Caivano was not eligible to participate in the SEPP because he had not been an eligible employee until 2004. (DE 59-4 ¶ 23 & Ex. N). On March 7, 2013, Giovinco directed Houghton to re-calculate the SEPP to reflect that Caivano had not been an eligible SEPP participant until 2004. (DE 59-4 ¶ 24 & Ex. O). Defendants do not dispute that after the International's trusteeship over the Local ended in 2004, Caivano's position with Local 148 made him eligible to participate in the SEPP. (DE 59-7 Ex. W at 93:20–96:4 & 100:10–101:9).

### J. Caivano's Continued SEPP Demands

Sometime in 2012, Caivano received his final SEPP statement; the statement concerned his SEPP entitlement as of 2011. (DE 59-7 Ex. X at 35:22–36:2). He did not receive further SEPP paperwork after that. (DE 59-7 Ex. X at 35:22–36:2). Caivano first questioned this alleged irregularity in early 2013. (DE 59-7 Ex. X at 36:11–14).

Around the same time, the International merged Local 148 into Local 1931, and it appointed Giovinco as trustee of Local 1931. (DE 59-1 ¶ 60).

On June 4, 2013, Caivano's counsel, David Shivas, wrote to Local 148 and the Welfare Fund, demanding the release of Caivano's SEPP and Pension Fund benefits. (DE 59-1 ¶ 62; DE 59-2 Ex. 5).

The Welfare Fund took the position that the demand was meritless and determined that no response to Caivano's letter was required. (DE 59-2 ¶ 22; DE 59-4 ¶ 40). The Fund's conclusion rested on the understanding that because Caivano was not SEPP-eligible until he became an employee of Local 148 in 2004, and that because the plan had been frozen in 2005, Caivano's SEPP benefits had never vested. (DE 59-2 ¶ 22; DE 59-4 ¶ 40).

### K. The State-Court Proceeding

In August 2013, Caivano filed suit in the New Jersey Superior Court against Local 148, the Welfare Fund, the Pension Fund, and the International. (DE 59-2 Ex. G). Caivano asserted an unjust-enrichment claim against the Pension Fund and sought to recover benefits that it had denied him. (DE 59-2 Ex. G).

In March 2014, in response to the SEPP claim in the lawsuit, Giovinco sent Scaraggi the SEPP forms that he had received from Red Bank, which listed Caivano as a participant. (DE 59-1 ¶ 66). Scaraggi reviewed the SEPP plan records and minutes of the trustees' meetings and again told Houghton that the forms incorrectly listed Caivano as a participant. (DE 59-1 ¶ 67 & Ex. E).

Caivano then subpoenaed the funds' accountant for all documents concerning the funding of the SEPP and the Pension Fund. (DE 59-2 ¶ 30 & Ex. H).

Bryan McCarthy, an attorney for the union, drafted a pre-mediation statement that summarized the claims:

> [Count Six] is a claim for the return of amounts deposited on Plaintiffs behalf in a defined contribution plan, Salaried Employees Pension Plan ("SEPP"), as a benefit of the Welfare Fund. The difficulty with Plaintiff's claim is that Fund Counsel had previously opined that Plaintiff was not an eligible employee upon whose

> behalf contributions should ever have been made. Furthermore, Welfare Fund Minutes, dated August 3, 2004, state that Plaintiff is not covered by the SEPP, and Plaintiff requests to receive pension coverage under SEPP and the trustees never voted to approve said request. It would be a violation of the ERISA, the plan and the fiduciary duty of the trustees to give the money to Plaintiff.

(DE 59-2 ¶¶ 31 & 33 & Ex. I). The parties did not settle the dispute at the mediation, but the two sides continued settlement negotiations. (DE 59-2 ¶ 36). McCarthy, in particular, pursued further settlement talks with Shivas. (DE 59-2 ¶ 37). Even though Caivano had sued for Pension Fund benefits, that topic was never discussed in settlement negotiations. (DE 59-2 ¶ 39).

After several rounds of negotiations, McCarthy drafted a settlement agreement, which he sent to Shivas to review on July 30, 2015. (DE 59-2 ¶ 40). Later that day, Shivas sent McCarthy his revisions, which did not address SEPP claims or any other pension benefits. (DE 59-2 ¶ 41 & Ex. J). Caivano did not personally negotiate the settlement, but Shivas did so on his behalf. (DE 59-7 Ex. X at 112:6–24).

On August 13, 2015, Caivano and Shivas reviewed the "Confidential Settlement Agreement and General Release." (DE 59-7 Ex. X at 72:8–73:18; DE 59-2 Ex. K). Caivano then signed the agreement. (DE 59-7 Ex. X at 72:8–73:18; DE 59-2 Ex. K). Under the terms of the agreement, Caivano received $125,000 in consideration for relinquishing all claims that he had or could have brought against the Local 148 defendants and their agents and successors. (DE 59-2 ¶ 43).

**L. Caivano's Renewed SEPP Benefits Claim**

In May and June 2016, Caivano contacted the administrator of the Welfare Fund, demanding his SEPP benefits statements. (DE 59-7 Ex. X at 76:6–20). This request effectively echoed the one he had made before filing the state-court lawsuit. (DE 59-7 Ex. X at 76:6–20). In October 2016, Victor Sherman (a lawyer apparently acting on Caivano's behalf) wrote to the Pension Fund's trustees to find out why Caivano had not received SEPP statements for 2014, 2015, and 2016. (DE 59-2 ¶ 45, DE 59-4 ¶ 50). McCarthy responded

that the settlement agreement had bound Caivano to release all claims for funds benefits and that Caivano was therefore not entitled to the documents. (DE 59-2 ¶ 45 & Ex. L).

On June 2, 2017, Houghton told Giovinco that Caivano had left him a voicemail asking why he had not received additional SEPP benefits statements. (DE 59-4 ¶ 51; DE 59-2 ¶ 47 & Ex. M). On June 5, Houghton told McCarthy and Giovinco that Caivano had been excluded from the SEPP because he was not an eligible employee of the Welfare Fund therefore not entitled to its benefits. (DE 59-4 ¶ 52; DE 59-2 ¶ 48; DE 59-3 Ex. M). McCarthy, Giovinco, and Scaraggi investigated the issue and confirmed, based on their recollections of 2012, that the trustees had addressed the SEPP issue with Caivano and that the trustees had directed Houghton to re-calculate the SEPP in light of Caivano's pre-2004 ineligibility. (DE 59-1 Ex. D; DE 59-4 ¶ 53; DE 59-2 ¶ 49).

The Welfare Fund again determined that Caivano was not entitled to SEPP benefits and that the settlement agreement had extinguished his claim to them. (DE 59-4 ¶ 55; DE 59-2 ¶ 51). McCarthy, Giovinco, and Scaraggi decided to not respond. (DE 59-4 ¶ 55; DE 59-2 ¶ 51).

## II.   PROCEDURAL HISTORY

On February 9, 2018, Caivano filed this action in federal court. (DE 1). On the same day, he filed an amended complaint. (DE 3). Caivano's amended complaint asserted six causes of action: (1) declaratory judgment; (2) breach of contract; (3) retaliation/punitive damages; (4) promissory estoppel; (5) breach of the implied covenant of good faith and fair dealing; and (6) breach of fiduciary duty against Red Bank. The thrust of these causes of action was that Caivano had been denied pension benefits to which he believed he was entitled.

The union defendants and Red Bank moved to dismiss the amended complaint. (DE 20 & 21). In an opinion and order dated November 21, 2018, I granted in part and denied in the part those motions:

The motions to dismiss were denied as to the following:

- Count 1 (declaratory judgment)

The following counts were dismissed with prejudice on grounds of ERISA preemption:

- Count 2 (breach of contract);
- Count 3 (punitive damages claim only);
- Count 4 (promissory estoppel); and
- Count 5 (breach of implied covenant of good faith and fair dealing).

The following counts were dismissed without prejudice, subject to an appropriate motion to amend within thirty days:

- Count 3 (retaliation claim only)
- Count 6 (breach of fiduciary duty, asserted against Red Bank only).

(DE 36 & 37).

On December 20, 2018, Caivano filed a timely motion to amend or correct the complaint. (DE 43). On April 25, 2019, the Hon. Steven C. Mannion, the magistrate judge assigned to this case, denied the motion. (DE 52). On October 28, 2019, the parties stipulated to the dismissal all claims against Red Bank. (DE 57).

The only remaining claim, then, is Count 1, asserted against the union defendants. That claim seeks a declaratory judgment that Caivano is a vested member of the SEPP and the Pension Fund and that defendants' actions violate ERISA. (DE 3 ¶¶ 51–54).

## III.   DISCUSSION

### A. Standards of Review

#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in light most favorable to the nonmoving party. *See Boyle v. Cty. of*

*Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth the types of evidence on which a nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Nw. Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

### 2. ERISA

When a plaintiff challenges an administrator's determination under an ERISA-governed employee benefit plan, the court will review that challenge under a *de novo* standard of review unless the plan itself gives the

administrator discretionary authority to determine eligibility for benefits. In such a case, the court will apply an abuse-of-discretion[4] standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Third Circuit has helpfully explained that scheme:

> The Supreme Court has held that "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations, we review its decisions under an abuse-of-discretion (or arbitrary and capricious) standard. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009). "Whether a plan administrator's exercise of power is mandatory or discretionary depends upon the terms of the plan." *Luby v. Teamsters Health, Welfare, & Pension Trust Funds*, 944 F.2d 1176, 1180 (3d Cir. 1991). There are no "magic words" determining the scope of judicial review of decisions to deny benefits, and discretionary powers may be granted expressly or implicitly. *Id.* However, when a plan is ambiguous, it is construed in favor of the insured. *Heasley*[ *v. Belden & Blake Corp.*], 2 F.3d [1249,] 1258 [(3d Cir. 1993)] "The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies." *Kinstler v. First Reliance Std. Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999).

*Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 414 (3d Cir. 2011) (footnote omitted).

Here, Defendants have met their burden of showing that the arbitrary and capricious standard of review applies, because the SEPP documents unambiguously confer discretionary authority upon the administrators.

---

[4] The U.S. Court of Appeals for the Third Circuit has described the deferential standard of review used in the ERISA interchangeably as "arbitrary and capricious" or "abuse of discretion." *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 n.6 (3d Cir. 2010).

The SEPP plan documents, the plan agreement, and the adoption agreement define eligibility and vest in the trustees the sole right to determine plan eligibility. (DE 59-4 Exs. O & P). The adoption agreement limits eligibility to all employees of the Welfare Fund or Local 148. (DE 59-4 Ex. P at 3 ¶ 13). The plan agreement further defines an "Employee" as "any person who is employed by the Employer." (DE 59-4 ¶ 29 & Ex. Q at 7 § 1.23).

Pursuant to the plan agreement, an ineligible participant may be removed from the SEPP if he or she was erroneously included. (DE 59-4 ¶ 29 & Ex. Q at 16 § 2.4). The plan agreement also vests in the administrator the authority to "determine all questions arising in connection with the administration, interpretation, and application of the Plan." (DE 59-4 ¶ 29 & Ex. Q at 16 § 2.4). It similarly provides that

> Benefits under this Plan will be paid only if the Administrator decides in its discretion that the applicant is entitled to them;
>
> Any such determination by the Administrator shall be conclusive and binding upon all persons; and
>
> The Administrator may establish procedures, correct any defect, supply any information, or reconcile any inconsistency in such manner and to the extent as shall be deemed necessary or advisable to carry out the purpose of the Plan.

(DE 59-4 ¶ 29 & Ex. Q at 16 § 2.4).

The SEPP unambiguously grants the administrator discretionary authority. I therefore will apply the arbitrary and capricious (or abuse of discretion) standard of review. *Viera*, 642 F.3d 407, 414. Under that standard, "a court may overturn a decision of the Plan administrator only if it is without reason, unsupported by the evidence or erroneous as a matter of law." *Cottillion v. United Ref. Co.*, 781 F.3d 47, 55 (3d Cir. 2015) (internal quotation and citation omitted). "A decision is supported by substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision." *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000) (noting that under abuse of discretion standard of review in ERISA cases, an

administrator's interpretation of a plan may only be disturbed if it is without reason, unsupported by substantial evidence, or erroneous as a matter of law). Even under this standard "an administrator's 'interpretation may not controvert the plain language of the document." *Cottillion*, 781 F.3d 47, 55 (quoting *Dewitt v. Penn Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir. 1997)).

I must therefore determine whether there was a reasonable basis for the trustees' determinations, based on the terms of the SEPP documents and the relevant facts. *Duda v. Standard Ins. Co.*, 649 F. App'x 230, 234 (3d Cir. 2016).

**B. Analysis**

The parties contest two issues: (1) whether Caivano was ever entitled to receive SEPP benefits in the first place; and (2) if so, whether he released his claim to those benefits by settling his earlier lawsuit.[5]

**1. Caivano's Eligibility**

The union argues that Caivano never vested in the SEPP because, as an employee of the International, he was never eligible to participate in the fund, which was created for the benefit of the Local's employees. (DE 59-9 at 12–18; DE 61 at 3–8). The union notes that Caivano's only evidence that he was SEPP-eligible is an oral, unverified assurance. (DE 63 at 7–12). The union alleges that there is no genuine issue of material fact that in 1999 Caivano was hired by the International—not by the Local—to act as a trustee. (DE 63 at 14–17).

Caivano argues that the union deprived him of his vested SEPP rights, and did so unlawfully, because ERISA provides that pension rights are inalienable. (DE 60-1 13–18). Caivano maintains that the SEPP documents themselves prohibit the transfer of its benefits. (DE 60-1 at 18–21). Caivano insists that there is no factual dispute that was he eligible to participate in, and vested in, the SEPP. (DE 64 at 2–5).

At the outset, the Court must determine whether Caivano was eligible to participate in the SEPP:

---

[5] The parties also disagree as to whether this lawsuit is barred by the entire-controversy doctrine (DE 59-9 at 26–27; DE 62 at 27–28).

> A plaintiff seeking to recover under section 502(a)(1)(B) must
> demonstrate that the benefits are actually "due"; that is, he or she
> must have a right to benefits that is legally enforceable against the
> plan. See 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be
> brought—(1) by a participant or beneficiary—. . . (B) to recover
> benefits due to him under the terms of his plan." (emphasis
> added)). Benefits must have "vested" in order to be legally "due."

*Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006); *see also id.* at
574-75 ("[T]he parties may themselves set out by agreement or by private
design, as set out in plan documents, whether . . . welfare benefits vest, or
whether they may be terminated.") (quoting *Hansen v. White Motor Corp. (In re
White Farm Equip. Co.),* 788 F.2d 1186, 1193). However, an ERISA-qualified
plan does not vest until "all of the conditions precedent to the employee's
receipt of that benefit have been satisfied." *Id.* at 55. Only then is "that benefit
. . . said to have accrued (or 'vested' or 'ripened') and cannot be taken away by
plan amendment or termination." *Id.* at 575 (quoting ABA Section of Labor &
Employment Law, *Employee Benefits Law* 1052 (2d ed.2000)).

Both parties rightly identify Caivano's eligibility for the SEPP as the
threshold issue in this dispute. The critical inquiry, therefore, is whether
Caivano was between 1999 and 2004[6] an employee of the International or of
the Local. If he was an employee of the International, he was not entitled to
participate in the SEPP in the first place; if he was an employee of the Local, he
was at least potentially eligible, and the inquiry continues.

The evidence produced during discovery reveals that there is no genuine
dispute that Caivano was employed by the International, did not vest in the
SEPP, and is not entitled to receive benefits from it. In the first instance,
Caivano's positions as deputy trustee and trustee of Local 148 were created
and filled by the International when it placed the Local into trusteeship in

---

[6]    SEPP benefits vested only after an employee had provided two years of service.
If Caivano's employment with the Local began only in 2004, then his SEPP benefits did
not have time to vest, because the trustees agreed to end the SEPP in 2005.

1999. In 2004, the decision of the International—not the Local—eliminated the trustee position when it ended its trusteeship over the Local.

Caivano's job duties and the chain-of-command he followed also demonstrate that he was not employed by the Local until 2004. As deputy trustee and trustee, Caivano oversaw the Local's operations and reported directly to the president of the International. Caivano also reported to the secretary-treasurer and the lawyer of the International. There is no evidence that his work was overseen by the Local. In fact, because the International's trusteeship of the Local created the need for Caivano's position in the first place, a conflict of interest likely would have emerged if he had been employed by the Local.

The record also shows that the International, not the Local, selected Caivano for the position; that the International approved his pay raises; and that he reported to the International on a daily basis. There is further evidence that Caivano's position as trustee flowed from the International and not from the Local: after initially serving as deputy trustee, it was the International that elevated him to the position of trustee. And during his service in those roles, the International annually awarded him pay raises.

Defendants have produced testimony when a union is placed into trusteeship, the International obliges the union to finance the trustee position, but that the trustee nevertheless remains an employee of the International. (DE 59-1 ¶¶ 18–20). In this case, the International initially paid Caivano his salary directly and received reimbursement from the Local. At some point, due to International's concerns for the Local's solvency, it required the Local to pay Caivano directly. Caivano now attempts to cite his paychecks as evidence that he worked for the Local, but this financial arrangement does not detract from his status as an employee of the International. Accordingly, Caivano was not employee of the Local before 2004, and therefore became eligible to participate in the SEPP only when he relinquished his trustee position and took on a position with the Local in 2004.

Nor do the records of the SEPP suggest otherwise. The trustees of the Welfare Fund, the body vested with the determining SEPP eligibility, repeatedly declined to grant Caivano admission to the SEPP.

Caivano admits that, beginning in 1999, the trustees did not approve his participation in the SEPP because they did not consider him an eligible employee. Nevertheless, in 2004, as administrator of the Welfare Fund, Caivano, without authorization, retroactively added himself to the SEPP with a starting date of 1999. Indeed, Caivano, as late as 2003, admitted in his report to the president of the International that Nardone, then the Welfare Fund's trustee and a past president of the Local, had prohibited him from enrolling in the SEPP. In the report, Caivano explained that Nardone told him that because he had been appointed by the International, he was an employee of the International and therefore was an employee of neither Local 148 nor the Welfare Fund. Caivano has not presented any evidence that Nardone, the International, or the Welfare Fund trustees ever agreed to treat his trusteeship as service towards SEPP eligibility. Caivano neither disputes that the SEPP is a pension plan for salaried employees of Local 148 and the Welfare Fund nor that the International is an entity separate and distinct from Local 148 and the Welfare Fund.

Caivano now supports his claim of SEPP eligibility by producing statements that were issued to him between 2005 and 2011. These statements show that he was vested in the SEPP and became eligible in July 1999. These records, however, were generated only because *Caivano himself*, without authorization, added himself to the census report that *he* created for Red Bank. The evidence reveals that at the time he did so, Caivano knew that his claim to SEPP benefits was illegitimate: the month after adding himself to the SEPP, at the August 2004 trustees' meeting, he requested approval for four years of retroactive SEPP coverage. At that time and at all other meetings, the trustees took no action with respect to Caivano's SEPP request.

Indeed, Caivano does not dispute that he added himself to the SEPP and that the Welfare Fund trustees had not approved his request. The evidentiary

value of the statements sent to him by Red Bank therefore have no independent evidentiary value; Red generated them only in response to the census report that Caivano had drafted for it. At the time Houghton generated those statements, he and Red Bank could not have known that the 1999 eligibility date was never approved by the trustees.

Instead, the record shows that Caivano's conduct was not discovered until September 2012—when he requested a SEPP roll-over following his termination. After receiving that request, the trustees investigated the matter and discovered that Caivano had designated himself as eligible to participate in the fund. The trustees then corrected that error at their next meeting. In March 2013, Giovinco and Scaraggi reaffirmed this determination of ineligibility. The evidence therefore reveals that Caivano was never eligible to participate in the SEPP.

Caivano now also personally affirms that he was entitled to participate in the SEPP:

> [] I did not unilaterally add my name to the roster of SEPP participants. The issue of my inclusion in the SEPP was discussed at several meetings of the Welfare Fund, including one at which Greg Auteri, the accountant for the Local and the Welfare Fund, stated that I was an employee of Local 148 and therefore eligible for the SEPP.

> [] Following that meeting, I was advised by the trustees of the Welfare Fund and the president of Local 148 that I had been approved to be added to the SEPP. I never took any such action without authorization and approval of the trustees. I was never a trustee of the Welfare Fund. I was directed to calculate my participation in the SEPP retroactive to my employment beginning in 1999.

(DE 62-2 ¶¶ 18–19). While it is true that Auteri opined on Caivano's SEPP eligibility, Auteri was not a trustee and therefore had no authority on the matter. (DE 59-1 Ex. C). Moreover, there are no records that reflect the trustees' decisions to add Caivano to the SEPP. In fact, the meeting minutes show that the trustees did not reach the issue. Finally, and most critically, the

meeting after which Caivano alleges to have received SEPP approval took place on August 3, 2004—a month after Caivano sent Red Bank the census report in which he had included his own name. Thus, his assertion that "I never took any such action without authorization and approval of the trustees," is without merit.

*A fortiori,* the determination that Caivano was ineligible will not be overturned under the abuse-of-discretion standard. *See supra.*

### 2. The Effect of the Settlement Agreement

The union also argues that Caivano's current claims were extinguished by the settlement and release in the prior state-court action. (DE 59-9 at 18–26). As the union sees it, Caivano received generous consideration in the settlement agreement in exchange for his release of his SEPP claims. (DE 63 at 20–22). In any event, the union argues, under ERISA, the SEPP is not an entity that can sue and be sued. (DE 24–27).

Caivano counters that the settlement agreement did not terminate his SEPP rights because in that litigation he did not assert an ERISA claim. (DE 62 at 19–21). He claims that he did not learn that he might have a claim to his SEPP benefits until after the settlement was signed. (DE 62 at 23–28).

The issue of the scope of the prior settlement agreement need not be reached. The issue is irrelevant because the determination that Caivano was never an eligible employee cuts off his claims at the outset.

## IV.   CONCLUSION

For the foregoing reasons, the union's motion for summary judgment is **GRANTED**. Caivano's motion for summary judgment is **DENIED**.

A separate order will issue.

Dated: April 15, 2020

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**